# FOURTH DISTRICT, 1901.

### M. A. FABER v. BURT MUIR ET AL.

Decided October 23, 1901.

**1.—Mechanic's Lien—Owner of Property—Purchaser by Executory Contract.**

A person in possession of land under a written contract to purchase it, is not the owner thereof within the meaning of the statute giving a lien to one who furnishes labor or material in the construction of a building under and by virtue of a contract with the owner, and such person is not entitled to fix a lien on either the lot or the building. Rev. Stats., art. 3294.

**2.—Same—Consent of Owner.**

Where the vendee in an executory contract for the sale of a lot agreed to erect a building thereon, and the vendor agreed to advance him a certain sum of money for its construction, and the vendee went into possession and employed plaintiff, who furnished labor and material for the building, and the vendor, without notice of plaintiff's employment, paid to the vendee the sum agreed to be advanced, plaintiff was not entitled to fix a lien upon the premises under the statute, since he had no contract with the owner, and the fact that the latter consented to the erection of the building would not give the right to a lien.

Appeal from Dallas. Tried below before Hon. Richard Morgan.

Chas. A. Rasbury and Frank Reed, for appellant.

J. C. Muse, for appellees.

NEILL, Associate Justice.—This suit was brought by M. A. Faber against the appellees, Burt Muir, S. McKell, and L. A. Wilson, for an alleged debt for $750, due by Muir, and to foreclose an alleged attachment and mechanic's lien on a certain lot and a building thereon, for which the debt was contracted, as against him and the other appellees.

The case was tried without a jury, and the trial resulted in a judgment in favor of the appellant against Muir for the alleged debt, and in favor of appellees, refusing to establish and foreclose the alleged mechanic's lien.

*Conclusions of Fact.*—On the 11th day of December, 1899, the appellee, Joseph S. McKell, being the owner of a certain lot situated in the city of Dallas (it being the lot upon which the lien was claimed), entered into a written contract with Burt Muir, by which the latter agreed to purchase said lot for the consideration of $2200,—$300 to be paid in cash, and the balance in sixty promissory notes for $31.86 2-3, to be dated and executed upon the completion of certain improvements to be erected on said lot, and payable monthly on or before the first of each month after the date thereof, with interest at the rate of 8 per cent per annum, payable annually, and to be secured by the usual form of vendor's lien and trust deed; it being understood that the deed from McKell to Muir should be executed and delivered upon the completion of certain improvements to be made on the lots by Muir as hereinafter stated. By the contract Muir agreed and obligated himself to build on said lot a one-story frame cottage of rooms according to the plans and specifications to be thereafter made and attached to and made a part of the contract. Muir also agreed to have said work commenced immediately after the delivery of the agreement, or as soon thereafter as practicable, and to have the same completed with as little delay as possible, free from any and all liens, except a lien to be reserved by McKell for part of the purchase money.

By said contract McKell agreed to deposit with his agents, Seay, Terry & Co., the sum of $1600, to be disbursed by them in the erection of said improvements, which should cost not less than that sum, upon the order of the superintendent as the improvements progressed, and not otherwise. It was also agreed that if Muir failed to erect the improvements according to the plans and specifications agreed upon, McKell or his agents should have the power to stop the work, and take actual possession of the same, and have the improvements made according to the plans and specifications.

The agreement recites that in consideration thereof Muir had deposited with the agents of McKell the sum of $100 as a guarantee of good faith of the fulfillment of the contract, and that should the title prove defec-

tive and should not be made good within not exceeding sixty days, the deposit should be returned to Muir; but if the title should prove good, the deposit should be applied as a part of the cash payment,—the balance of the cash payment to be made at once upon the completion of said improvements. Upon the execution of the contract by both parties thereto, the $1600 provided for therein was immediately deposited by McKell with his agents, Seay, Terry & Co., for the purposes stated.

After the execution of the contract, and during the month of December, 1899, said agents of McKell and Burt Muir agreed orally that Muir, who was both a contractor and architect, should proceed to erect and construct on the lot the cottage stipulated for, and agreed to pay the money deposited as before stated to Muir as the construction of the building progressed, the plans and specifications of the building being at that time agreed upon between the parties, and it being mutually understood between them that Muir, as contractor, should construct the building and supervise and act as superintendent in constructing the same.

On February 15, 1900, the appellant, M. A. Faber, entered into a verbal contract with Burt Muir to erect and construct a one and one-half story frame residence upon the lot described in the contract between McKell and Muir. By the agreement Faber was to furnish the labor and material for the erection of said house. In consideration therefor Muir agreed to pay him for the job the sum of $1600 on or before the completion of the work. Immediately thereafter Faber proceeded to perform the work, and on March 15, 1900, completed it in compliance with his contract, furnishing the material and labor therefor, and delivered the building to Muir, who accepted the same on that date, admitting that Faber had furnished the material and labor and constructed the house in compliance with the agreement, and was entitled to be paid in full the amount therefor. But under said contract Faber was not to complete the house—the doors and windows, stairway, papering and painting not being included in his contract.

As the work progressed, Seay, Terry & Co., the agents of McKell, without notice of appellant's contract with Muir, or of his claim to a mechanic's lien, under the apprehension that Muir was furnishing the labor and material for the erection of the building, paid him, during the progress of its construction, the sum of $1600, deposited by McKell with said agents, for the purpose stated in the written contract of sale hereinbefore mentioned. Of this $1600 Muir paid appellant $850 for labor done and material furnished in constructing said house, leaving a balance due him therefor of $750, which has never been paid him by Muir or any one else.

Neither McKell nor his said agents knew of appellant's contract with Muir, nor of the balance due him from Muir, until after payment by said agents to Muir of said sum of $1600. The agents thought Muir was doing the work himself, and for that reason the payments were made to him by them. Though one of the agents, during the construction of the building, did see appellant at work thereon, he thought he was simply

a laborer employed by Muir. When appellant made the contract with Muir, he thought the latter was the owner of the lot upon which the house was to be built, and did not learn to the contrary, nor of Muir's contract with McKell, until after he had furnished the material and did the work on the building, as provided for in his contract with Muir.

No part of the $1600 advanced to Muir to build the house under the contract with him has ever been repaid. Muir abandoned the property, and failed to complete the building, and the contract between him and McKell was rescinded in April, 1900, Muir verbally consenting to said rescission, and stating that he could not complete the building, nor comply with his agreement to purchase.

On the 19th day of May, 1900, McKell, in pursuance of a written contract theretofore made on the 15th day of said month, for a valuable consideration, conveyed by warranty deed the lot upon which the lien is claimed to the appellee, L. A. Wilson. Wilson paid, principally in promissory notes, full value for the premises, without notice that appellant was asserting any claim or lien thereon. On the 5th day of April, 1900, prior to the contract of sale and the execution of the deed to Wilson, the appellant filed his original petition in this suit against Burt Muir only, wherein he alleged that the sum of $750 was due him by Muir for furnishing the material and constructing the building on the lot upon which the lien is now claimed, under a verbal agreement between the parties. In this petition no lien either upon the lot or building was asserted or claimed by Faber. The only relief he prayed for was judgment for his debt. At the time and prior to the sale for Wilson, Seay, Terry & Co., as agents of McKell, had actual notice of the filing of said original petition, and of the averments therein. And we think we can safely conclude from the evidence in the record that Wilson, at the time of his purchase, had the same notice; but none that appellant claimed or contemplated asserting a builder's or mechanic's lien upon the premises. At the same time the warranty deed was made by McKell to Wilson, a quitclaim deed from Burt Muir to him was procured by McKell's agents to said premises. When Wilson purchased, he had never seen the written contract between Muir and McKell. Upon the day the deed was executed to Wilson, he, being a married man, moved into the house on the premises, completed its construction, and has ever since used and claimed the premises as his homestead, he having no other. On the first day of June, 1900, the appellant filed with the county clerk of Dallas County his account against Muir for the material furnished and labor done by him in the construction of said building, together with his affidavit setting out the terms of his contract with Muir, the amount due thereon, in which he asserted his claim to a mechanic's lien upon the lot, and the house thereon constructed, as against Muir and McKell, stating in said affidavit that he had given the agents of the latter, Seay, Terry & Co., notice of the lien for the labor performed and material furnished in accordance with article 3296 of the Revised Statutes; that said notice was given on the 1st day of June, 1892, and that he also, by a registered

letter, mailed a copy of said notice to J. S. McKell, at Chilicothe, Ohio, where he was informed McKell then resided; and that at the same time he mailed to Burt Muir a copy of said notice, addressing said notice to him at Dallas, Texas. Copies of said notice were proven to have been delivered to Seay, Terry & Co., and mailed to the other parties, as stated in said affidavit. After said account and affidavit were filed with the county clerk of Dallas County, they were duly recorded therein in the book of mechanic's liens.

*Conclusions of Law.*—In order for one who furnishes labor or material to erect a house, to fix a lien thereon, and the lot or land necessarily connected therewith, it is necessary that the labor should be done or material furnished "under or by virtue of a contract with the owner or his agent, trustee, receiver, contractor, or contractors." Rev. Stats., art. 3294. In this case, as is shown from the evidence, the labor was done and material furnished by the appellant under and by virtue of a verbal contract made by him with Muir, to which the other appellees were strangers, and of which they had no notice. The question then is, was Burt Muir the "owner, agent, or contractor," within the meaning of the statute, of the lot and building upon which the lien is claimed? For it is apparent that he was neither a trustee nor a receiver.

A person in possession of land under a written contract to purchase is not, within the meaning of the statute quoted, the owner of the lands or the improvements he may place upon it; and for this reason can fix a lien upon neither. Association v. Perkins, 80 Texas, 67; Smith v. Huckeby, 4 Texas Civ. App., 80; 23 S. W. Rep., 397; Penfield v. Harris, 7 Texas Civ. App., 659, 27 S. W. Rep., 736; Thaxter v. Williams, 14 Pick., 49; Lamb v. Cannon, 38 N. J. L., 362; Guy v. Carriere, 5 Cal., 511; Johnson v. Pike, 25 Me., 291; Courtmanche v. Railway, 48 N. E. Rep., 937; Steel v. Mining Co., 42 Pac. Rep., 585. Thus it is seen that Muir was neither the owner of the building nor of the land upon which it was erected, and that, in contemplation of the statute, McKell was the owner.

There is no evidence tending to show that Muir was or acted as the agent of McKell in making the contract with appellant under which the labor was done and the material furnished in erecting the building. On the contrary, as is seen from our findings of fact, McKell was not known in the transaction between Muir and Faber.

It is not contended by the appellant that Muir was the contractor of McKell, the owner of the land and the building erected thereon. On the contrary, it is averred and proven that the contract was made between Muir and appellant, and that they alone were the parties to it, and that neither McKell nor his agents had any knowledge of the contract until after the rescission of the executory contract of sale between him and Muir. Therefore Muir can not, in contemplation of the statute, be deemed the contractor of McKell, the owner. If, however, Muir could be deemed the contractor of McKell, he would necessarily be the

original contractor, and the appellant a subcontractor. In that event the latter would not have a lien, because (1) Muir was fully paid by McKell for all the work and material done and furnished in the erection of the building before the latter or his agents knew that any of it was done or furnished by appellant under such circumstances as would entitle him to fix a lien (Fullenwider v. Longmoor, 73 Texas, 480) ; and (2) appellant did not, within the time required of everyone, save an original contractor, file his contract, etc., in the office of the county clerk in the manner provided by Revised Statutes, article 3295.

But it is contended by appellant that as, in the executory contract of sale between McKell and Muir, it was agreed that the vendee should erect a building upon the lot, and the vendor agreed to advance him a specific sum of money for the construction of such building, the appellant is, under the facts, entitled to the lien asserted by him. Where, as in Massachusetts, the statute provides that any person by whom labor is performed or material furnished for a building "by virtue of an agreement with or by *consent* of the owner of such building or structure, or of any person having authority from, or rightfully acting for such owner" (see copy of the statute quoted in note appended to opinion in Border v. Mercer, 39 Northeastern Reporter, 413), this contention is upheld. McCue v. Whitwell, 156 Mass., 205, 30 N. E. Rep., 1134; Carew v. Stubbs, 155 Mass., 549, 30 N. E. Rep., 219; Hilton v. Merrill, 106 Mass., 528. "There is, however, a broad distinction between statutes which provide for a lien for work performed or material furnished by virtue of the *contract* of the owner or his agent, and those which provide for a lien for work and materials furnished with the *consent* of the owner. Under the former no lien can be sustained unless a contract of the owner, express or implied, is proven; while under the latter a lien may be sustained when the owner's *consent* can be implied from his acts or declarations, or from the circumstances attending the transaction." Jones on Liens, 2 ed., sec. 1251. This distinction is recognized by the Supreme Court in Association v. Perkins, supra, in which it is said: "Under such a statute as is in force in this State, the mere fact that the owners of the property acquiesced in or consented to the furnishing of the material to be used on the premises, or to the performance of labor, could not fix liens on the property." We conclude, therefore, that the appellant could not fix a lien either upon the building or lot upon which it was constructed.

The appellant was not prejudiced by the failure of the court to foreclose the lien claimed by virtue of the attachment, for the property on which it was levied was never that of his debtor, and he could not subject McKell's property without his consent to Muir's debt.

In view of the fact that appellant acquired no lien on the property, it is unnecessary for us to determine whether Wilson was a bona fide purchaser.

The judgment is affirmed.

                                                          *Affirmed.*