OGBURN GRAVEL CO. et al. v. WATSON CO. et al. (No. 7585.)

(Court of Civil Appeals of Texas. Dallas. Nov. 18, 1916. Rehearings Denied Dec. 16, 1916.)

1. ASSIGNMENTS ⊂⊃56—ORDERS ON DEBTOR—ACCEPTANCE.

Where a contractor paid money due a subcontractor into court and sought to have claimants therefor interpleaded, the court properly rendered judgment of distribution, giving preference to those who had received orders from the subcontractor on the contractor, although such orders were not accepted, as they constituted an assignment of the fund to the extent of their respective amounts.

[Ed. Note.—For other cases, see Assignments, Cent. Dig. § 66; Dec. Dig. ⊂⊃56.]

2. MECHANICS' LIENS ⊂⊃115(4) — NOTICE — SUFFICIENCY.

When the materialman furnishes material, and it is used in the construction of the building, and gives notice to the owner, before the owner has paid out all of the contract price to the proper parties, the failure to give notice to the owner at the time each article is delivered becomes immaterial, in order to fix the lien, provided the statute is otherwise complied with, as no injury would result to interested parties.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. §§ 157–159; Dec. Dig. ⊂⊃ 115(4).]

3. MECHANICS' LIENS ⊂⊃20—CONSTITUTIONAL AND STATUTORY PROVISIONS—"OWNER."

Under Const. art. 16, § 37, providing that mechanics, materialmen, etc., shall have a lien on the building for the value of labor or material furnished, and the Legislature shall provide for the speedy enforcement of such lien, and the laws providing for such liens on buildings and lots necessarily connected therewith, and that notice shall be given the owner, in view of Rev. St. 1911, Final Title, § 3, providing that the common-law rule that statutes in derogation of common law shall be strictly construed shall have no application to the Re-

vised Statutes, as "owner" in the mechanic's lien law does not mean the absolute owner, but the owner of an estate or interest which the court may order sold, a holder of a 99-year lease which required the construction of a building with power to destroy and rebuild improvements, although it made lessee liable personally for liens, had the right to subject the property to the mechanic's lien, and its estate was subject to such lien.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. § 21; Dec. Dig. ☞20.

For other definitions, see Words and Phrases, First and Second Series, Owner.]

Error from District Court, Dallas County; Kenneth Foree, Judge.

Interpleader by the Watson Company against A. A. Grees and others. From the judgment fixing the rights of the parties, and from the overruling of their motion for a new trial, defendants Ogburn Gravel Company and others bring error. Reversed and rendered in part, and otherwise affirmed.

Burgess, Burgess, Germany & Chrestman, O. D. Brundidge, and W. J. Rutledge, Jr., all of Dallas, for plaintiffs in error. Holloway & Holloway and Adams & Stennis, all of Dallas, for defendants in error.

RAINEY, C. J. Watson & Co., building contractors, on February 21, 1914, entered into a written agreement with Neiman-Marcus Company to construct a four-story fireproof building, to cost about $100,000, on a lot of ground the fee-simple title to which was in the estate of J. C. O'Connor, deceased, and which lot of ground was held by Neiman-Marcus Company under a lease for 99 years, made with the trustees of said O'Connor estate, beginning on September 1, 1912. On May 18, 1914, Watson Company, as general contractors, entered into a written agreement with Greer & Co., as subcontractors, by which Greer & Co. were to do certain portions of the work, and to furnish certain materials, for said building, in consideration of $6,600; Greer & Co. giving bond for $3,000, with the American Surety Company of New York. Greer & Co., after partly filling their contract, abandoned it, and it was finished by Watson Company at a cost of $81.25, leaving still due Greer & Co. on the subcontract $1,242.98. Various parties furnished Greer & Co. material which went into the building, for which Greer & Co. still owed at the time of their abandonment of the work. Greer & Co. gave to several of his creditors written orders on Watson Company for the amounts due them, but Watson Company did not pay them.

On August 15, 1914, Watson Company filed suit in the nature of a bill of interpleader in the Fourteenth district court, Dallas county, against the following defendants: A. A. Greer and L. A. Painter, copartners doing business under the name of A. A. Greer & Co.; American Surety Company of New York, a private corporation; G. E. Moore;

Paul Cooper and J. W. Ogburn, copartners doing business under the name of Ogburn Gravel Company; Dallas Builders' Supply Company, a Texas private corporation; Moroney Hardware Company, a Texas private corporation; John L. Boyd; Neiman-Marcus Company, a Texas private corporation; Leonard E. Baldwin and Jim M. Harry, copartners doing business under the name of Baldwin-Harry Company; H. L. Tenison; Southern States Steel Company, a private corporation; Ira T. Moore and Alfred A. Moore, copartners doing business under the name of Moore & Co.—alleging the condition and claims of each, and tendered into court the sum of $1,242.98, and asked that each party be required to establish their respective claims; that the property of Neiman-Marcus Company be released and discharged from all liens and claims of all parties arising out of its subcontract with A. A. Greer & Co., asking that, if any liability in addition to the sum so tendered into court be fixed against plaintiff, then that it have judgment over against American Surety Company of New York for all such amounts as may be established against it. Neiman-Marcus Company answered by general demurrer, general denial, and specially, if judgment was rendered against it, that it have judgment over against Watson Company. The others answered, in effect, asserting their claims for material furnished Greer & Co., that they had fixed a mechanic's lien upon said property, and that notice had been given Neiman-Marcus Company, who at the time of notice held $12,000 of the contract price due Watson Company. The American Surety Company answered, denying the claim asserted against it that Greer & Co. had performed its contract, and asked for judgment, and by trial amendment alleged that Baldwin-Harry Company were partners of A. A. Greer & Co. in the performance of the subcontract between A. A. Greer & Co. and Watson Company, and denied that Baldwin-Harry Company was entitled to any lien against the property, or any judgment either against the fund paid into court or any other parties, by reason of its claims, and asked for judgment over against Baldwin-Harry Company in the event any judgment was rendered against it.

Watson Company by supplemental petition denied that it had accepted or promised to pay any amount to Moore & Co., or to Ogburn Gravel Company, or to any other parties, on orders drawn by A. A. Greer & Co., and denied that Dallas Builders' Supply Company had a just claim against it, or the property described above, for its amount of $181.05, for the reason that the material to that amount claimed to have been furnished Baldwin-Harry Company could not be the basis for a lien against Watson Company or A. A. Greer & Co., or against the building

into which the material was wrought, and denied, further, that it was liable to Dallas Builders' Supply Company for the sum of $25.50, because no lien or claim of lien had been asserted for said sum. They further denied that any of said claimants gave any notice of liens as the materials were furnished, and that any of them gave any notice until after Watson Company had paid A. A. Greer & Co. all funds due them, except the balance tendered into court. They further denied that the claims of materialmen's liens were properly filed, and pleaded that no valid materialmen's liens existed on said property, and that said claimants were estopped from claiming liens beyond the amount tendered into court. Baldwin-Harry Company, by supplemental answer, denied the partnership as alleged between them and A. A. Greer & Co., and remitted $347 of the amount asserted in their original answer, leaving a balance of $1,179.64 as their claim.

Upon the pleadings as presented the case went to trial before the court without a jury on December 23, 1914, and a judgment by default was rendered against A. A. Greer and L. A. Painter, composing the firm of A. A. Greer & Co., John L. Boyd, and Southern States Steel Company; further, that Watson Company's liability was limited to the amount of $1,242.98 tendered into court; and the property of Neiman-Marcus Company was discharged from all liens or claims of liens asserted by any of the parties to said suit. G. E. Moore was given judgment for $867.60 against A. A. Greer & Co., and was awarded payment in full of said amount out of the fund in the registry of the court, with the provision that Moore & Co. were entitled to receive $630.27 of said amount in satisfaction of their claim. Dallas Builders' Supply Company received judgment for $25.50 against A. A. Greer & Co., and was awarded payment of that amount out of the fund in the registry of the court. Moroney Hardware Company was given judgment against A. A. Greer & Co. for $33.40, and was awarded payment of that amount out of the fund in the registry of the court. Ogburn Gravel Company was given judgment against A. A. Greer & Co. for $218.35; Baldwin-Harry Company, for the use and benefit of H. L. Tenison, was given judgment against A. A. Greer & Co. for $1,179.64; and said parties were awarded payment of pro rata amounts of the balance of $316.48 remaining in the registry of the court, in the proportion that $218.35 bears to $1,179.64. American Surety Company was discharged from all liability. Said judgment further provided that the costs of court be paid by the parties recovering judgment out of the funds in the registry of the court, and that said parties bear their pro rata portions of the costs in the proportion that the respective amounts recovered by each bore to the total amount in the registry of the court.

Motions for new trial by plaintiffs in error were made and overruled, and later they sued out this writ of error.

The Ogburn Gravel Company and the Baldwin-Harry Company, with H. L. Tenison, have filed briefs, the consideration of which is objected to by defendants in error on what we consider technical ground; but we are of the opinion that all errors upon which a reversal is sought sufficiently present the errors relied on and require a consideration. The case is here presented upon an agreed statement of the facts presented on trial, and about which there is no controversy. Where the facts have not been above stated, we will state them when necessary in a discussion of the respective points treated hereafter.

[1] As to the money deposited in registry of the court due to Greer & Co. by Watson Company, the court was correct in its judgment of distribution, giving preference to those who had received orders from Greer & Co. on Watson Company, although not accepted by Watson Company, as such orders constituted an assignment of said fund to the extent of their respective amounts.

[2] Were the steps taken by plaintiffs in error to fix a mechanic's lien on said property sufficient, provided under the facts the interest of Neiman-Marcus Company was subject to the mechanic's lien? We think so. The claims were shown to be just and due. The material furnished to Greer & Co. was used in the building. Due notice of its being furnished was given to Neiman-Marcus Company and Watson Company before the time for fixing a lien had expired, and when Neiman-Marcus Company had in their hands $12,000 of the contract price, which had not been paid over to Watson Company. Due affidavits were made within the time prescribed by law for fixing the lien. But it is urged that the affidavits failed to show that notice was given to the owner of the property, or that notice of each item furnished was given when it was delivered. While this is true, notice of the items was given before the lien was fixed, and while Neiman-Marcus Company owed the contractor. When the materialman furnishes material, and it is used in the construction of the building, and gives notice to the owner before the owner has paid out all of the contract price to proper parties, the failure to give notice to the owner at the time each article is delivered becomes immaterial in order to fix the lien, provided the statute is otherwise complied with, as no injury would result to interested parties. Johnson v. Improvement Co., 88 Tex. 505, 31 S. W. 503; Nichols v. Dixon, 99 Tex. 263, 89 S. W. 765.

The next question for consideration, under the facts as shown by the record, is whether

or not the property and building erected thereon by Neiman-Marcus Company under a lease for 99 years is subject to the payment of debts for a mechanic's lien fixed by complying with the statute? Article 16, § 37, of our Constitution provides that:

"Mechanics, artisans and materialmen, of every class shall have a lien upon the buildings and articles made or repaired by them for the value of their labor done thereon or material furnished therefor; and the Legislature shall provide by law for the speedy and efficient enforcement of said liens."

In Strang v. Pray, 89 Tex. 525, 35 S. W. 1054, Mr. Justice Brown, in treating of said section 37, said:

"It was the intention of the members of the convention which framed and adopted this section of the Constitution to give full and ample security to all mechanics, artisans, and materialmen for labor performed and material furnished for the erection of all buildings and other improvements, and the courts must give such construction to this language as will carry out that intention. It is the well-established rule that if one devises or conveys a house or building to another, and there be nothing in the terms of the instrument or circumstances under which it is made which show a contrary intention, the land necessary to the use and enjoyment of the house or building, or which is so designated and set apart as to show that it was intended to be used in connection therewith, will pass by such conveyance or devise. * * * We conclude that a proper construction of the language of the Constitution of this state, as hereinbefore quoted, gives to mechanics, artisans, and materialmen a lien upon the interest or estate that the person causing such building or improvements to be made thereon has in the land upon which they are situated, for the value of the labor performed or material furnished in the erection and construction of such buildings, to the extent that the lands are necessary to its enjoyment or may be designated and set apart as intended to be used and enjoyed in connection with such building or improvement. The lien does not depend upon the statute, and the Legislature has no power to affix to that lien conditions of forfeiture."

[3] The Legislature has enacted laws in obedience to the Constitution by providing for fixing and enforcing liens on buildings, including "lots or lots of land necessarily connected therewith." In neither the Constitution nor the statutes does it specify what character of ownership in the land or building is necessary for the lien to be created. The only stipulation in the law is that notice shall be given to the owner in order to fix the lien. "The term 'owner,' as used in the mechanic's lien law, does not mean the absolute owner, but merely the owner of an estate or interest which the court may order sold." 27 Cyc. 52. In construing the statutes, the rule, as prescribed by R. S. 1911, under Final Title, § 3, is:

"That the rule of the common law that statutes in derogation thereof shall be strictly construed shall have no application to the Revised Statutes; but the said statutes shall constitute the law of this state respecting the subjects to which they relate; and the provisions thereof shall be liberally construed with a view to effect their objects and to promote justice."

In construing the statute in reference to mechanics' liens, we conclude that it was the intention of the Legislature that such liens could be fixed upon a building and the lot upon which it is built, if the party having it constructed had such an interest in the property as to be entitled to its use, possession, and control thereof for a long period of time. Neiman-Marcus Company has the property leased for a term of 99 years, and to that extent is owner of the property. The Constitution and statutes, in providing for such lien, does not in express terms require the person having the building erected to be the absolute owner of the property. By the terms of the lease under which Neiman-Marcus Company hold, they were not only authorized and empowered, but required, to build such a house on said lot. They had possession of, and were exercising control of, said property. They were empowered to sublet the building in whole or in part, and to destroy and rebuild the improvements erected on said premises, and may maintain an action of trespass involving said premises, which property is to' revert to the O'Connor estate at the end of the lease. This shows that Neiman-Marcus Company had the right to subject the property to the mechanic's lien, if not the estate of J. C. O'Connor, at least to the interest they had in it, although the lease made them personally liable for any lien so fixed.

The question here involved seems never to have been decided in this state. But in many of the older states, where leases of land for long terms are more common and have existed for a longer time, it is held by the higher courts that such liens can be enforced on a leasehold estate. In support of this we cite the following authorities: Jones, Landlord & Tenant, § 378; Crandall v. Sorg, 198 Ill. 48, 64 N. E. 769; Carey-Lombard Lumber Co. v. Jones, 187 Ill. 203, 58 N. E. 347; Lumber Co. v. Churchill, 114 Mo. App. 578, 90 S. W. 405; Jones v. Menneke, 168 N. Y. 61, 60 N. E. 1053; Boyer v. Keller, 258 Ill. 106, 101 N. E. 235, Ann. Cas. 1916B, 628; Lumber Mill Co. v. Amusement Co., 13 Cal. App. 4, 108 Pac. 891; Shaw v. Spencer, 57 Wash. 587, 107 Pac. 383; Potter v. Conley, 83 Kan. 676, 112 Pac. 608; 27 Cyc. 58. In Cyc., supra, it is said:

"It is usually held that, where a lease contains a provision authorizing the lessee to make repairs or improvements at the cost of the lessor, either generally or by deducting the cost from the rent, or where a part of the consideration for the lease is the making by the lessee of improvements, which become a part of the realty, or that improvements made by the lessee shall revert to the lessor, a mechanic's lien may attach to the property for work done or materials furnished pursuant to a contract with the lessee."

The judgment will be reversed as to plaintiffs in error, and here rendered against Neiman-Marcus Company, foreclosing the mechanic's lien on the interest of said Neiman-Marcus Company, and in favor of Neiman-Marcus Company against Watson Company for the amount of said lien, and in fa-

vor of Watson Company against American Surety Company of New York for the amount Watson Company has to pay; and in all other respects it is affirmed.